UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH DOWNING,<br><br>         Plaintiff,<br><br> v.<br><br>DR. KHAN, *et al.*,<br><br>         Defendants. | Case No. 2:23-cv-00082-ART-NJK<br><br>ORDER |

  Plaintiff Joseph Downing, an inmate at High Desert State Prison (HDSP), brings this civil-rights action under 42 U.S.C. § 1983 in connection with his treatment as a pretrial detainee at Clark County Detention Center (CCDC). The Court allowed Plaintiff to proceed with his claims for Fourteenth Amendment due process inadequate medical care violations against various defendants for not receiving treatment for sleep apnea and knee issues, Fourteenth Amendment due process inadequate mental health care violations against Defendants Dr. Khan and Maggie Sandquist ("Sandquist") from "psych services", and Fourteenth Amendment due process inadequate mental health care violations against Vincent Varias ("Varias"), another psych services employee, and Sgt. Floyd.

  Before the Court are 1) Plaintiff's Emergency Motion for a Temporary Restraining Order (TRO) (ECF No. 25), Plaintiff's Motion for Relief and Affidavit (ECF No. 26), Defendants' Motion to Dismiss (ECF No. 32), Plaintiff's Motions to Amend his Motion for a TRO (ECF Nos. 34, 36, 53), Plaintiff's Motion to Extend Time to Respond to Defendants' Motion to Dismiss (ECF No. 37), Plaintiff's Motion for the Court to Reconsider its Order Granting a Stay of Discovery (ECF No. 42), and Plaintiff's Motion for Default Judgment (ECF No. 55).

///

## I. BACKGROUND

Plaintiff brings three claims for alleged constitutional violations that occurred while he was at CCDC. In his first claim, Plaintiff alleges that CCDC officials violated his Fourteenth Amendment right to adequate medical care by not providing treatment for his sleep apnea for thirty months nor for the gout in his left knee. (ECF No. 6 at 3, 7-8.)

In his second claim, Plaintiff alleges Plaintiff claims that Dr. Khan and Sandquist, an employee at CCDC's psych services, violated his Fourteenth Amendment right to adequate mental health care. He states that Sandquist would repeatedly remove him from the psych services unit despite needing programming and treatment only available there. (*Id.* at 5, 9-10.) Plaintiff states that Dr. Khan allowed these removals to occur and did nothing to stop Sandquist, and he would only return Plaintiff to psych services after the removal already occurred. (*Id.*) Plaintiff alleges that Sandquist and Dr. Khan were playing a game and were fully aware of how the repeated transfers would impact Plaintiff. (*Id.* at 10.) Plaintiff became suicidal and believed that both Sandquist and Dr. Khan intended for Plaintiff to kill himself. (*Id.*)

In his final claim, Plaintiff alleges that Varias, a psych services employee, ordered staff to move Plaintiff to general population. (*Id.* at 5, 11-12). Plaintiff tried informing Varias that he had just recently been moved to the psych services unit and requested Varias review his case file. (*Id.*) Instead of doing so, Varias ordered Plaintiff moved to disciplinary housing for refusing housing and said Plaintiff was not suicidal. (*Id.* at 5.) Plaintiff was taken to disciplinary housing and immediately informed Sergeant Floyd that he was suicidal and would kill himself if placed in the hole. (*Id.*) Sergeant Floyd called psych services, handcuffed Plaintiff, and placed him in the visit video cages. (*Id.*) Varias arrived and Sergeant Floyd unholstered his taser and told Varias to tase Plaintiff. (*Id.*) Both Varias and Sergeant Floyd bullied and threatened Plaintiff, including saying

"We should take him out back and beat him like the old days" and saying Plaintiff should just kill himself so they would have less work. (*Id.* at 11.) Instead of helping Plaintiff, these Defendants exacerbated Plaintiff's suicidal feelings. (*Id.*) After meeting with Plaintiff again approximately twenty minutes after his original transfer order, Varias transferred Plaintiff back to the psych unit. (*Id.*) Plaintiff notes that while he was being escorted back to the psych services unit, one of the officers told Sergeant Floyd, "I know a blind spot in the cameras if you want us to fuck him up, Sgt." (*Id.*)

## II. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Furthermore, filings by pro se parties are to be liberally construed, especially in civil rights cases. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("[W]e continue to construe pro se filings liberally when evaluating them under Iqbal.").

///
///
///

**III.   DISCUSSION**

  a. Motions for a Temporary Restraining Order

Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." See *Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), overruled on other grounds by *Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter*, instructing that the plaintiff "must establish that [he] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

A plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (internal quotations omitted). The Prison Litigation Reform Act ("PLRA") similarly instructs that any restraining order or preliminary injunction

4

1 granted with respect to prison conditions "must be narrowly drawn, extend no
2 further than necessary to correct the harm the court finds requires preliminary
3 relief, and be the least intrusive means necessary to correct that harm." 18
4 U.S.C. § 3626(a)(2).

5 Finally, "there must be a relationship between the injury claimed in the
6 motion for injunctive relief and the conduct asserted in the underlying
7 complaint." *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631,
8 636 (9th Cir. 2015) ("Pacific Radiation"). "This requires a sufficient nexus
9 between the claims raised in a motion for injunctive relief and the claims in the
10 underlying complaint itself." *Id.* The necessary connection is satisfied "where
11 the preliminary injunction would grant 'relief of the same character as that
12 which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines*, 325 U.S.
13 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks
14 authority to grant the relief requested." *Id.*

15 Plaintiff filed a motion for a TRO and multiple motions to amend concerning
16 attempts to discipline Plaintiff for calling Ms. Porray, some of the Defendants'
17 counsel, after she requested to talk to Plaintiff. (ECF No. 25 at 1-2.) Plaintiff
18 alleges that prison officials have retaliated against him following the call
19 because nobody informed Plaintiff that he was not supposed to call her for the
20 meeting. (*Id.* at 2-4.) In his subsequent motions to amend the Motion for a
21 TRO, Plaintiff alleges that Ms. Porray and HDSP officials "acted in concert to
22 retaliate against [him]" and that HDSP officials charged Plaintiff with
23 unauthorized use of equipment or mail for making the call (ECF No. 36 at 1-2,
24 6-7.) Plaintiff further notes that he was eventually found not guilty of the
25 charges. (ECF No. 53 at 1).

26 Plaintiff asks this Court to issue orders against individuals not named in the
27 present case for conduct unrelated to the underlying complaint. Such an order
28 is beyond the power of this Court. *Pac. Radiation Oncology, LLC,* 810 F.3d at

5

1  636 ("[T]here must be a relationship between the injury claimed in the motion
2  for injunctive relief and the conduct asserted in the underlying complaint.").
3  Thus, the Court will grant Plaintiff's motions to amend his motion for a TRO
4  (ECF Nos. 34, 36, 53) but deny Plaintiff's motions for a TRO (ECF Nos. 25, 26).[1]

      b. Motion for Extension of Time to Respond to Defendants' Motion to Dismiss

Finding good cause, the Court grants Plaintiff's Motion for an Extension of Time to Respond to Defendants' Motion to Dismiss (ECF No. 37.) Because Plaintiff already filed his Response (ECF No. 46), the Court will grant the motion nunc pro tunc.

      c. Motion to Reconsider Order Granting Stay of Discovery

Plaintiff next asks this Court to reconsider (ECF No. 42) Magistrate Judge Koppe's order granting a stay of discovery (ECF No. 38). Plaintiff argues that he asked for extensions of time to file his opposition both to Defendants' Motion to Dismiss and Motion to Stay Discovery in ECF No. 37. (ECF No. 42 at 1.) While Plaintiff is correct, the Court notes that Judge Koppe's order states that "[i]f the resolution of the motion to dismiss does not result in the termination of the case, a discovery plan must be filed within 14 days of the order resolving the motion to dismiss." (EC No. 38 at 1.) Because the order requires discovery to resume following the Court's resolution of the motion to dismiss, which the court addresses in this order, the Court will deny this motion as moot.

      d. Motion for Default Judgment

Plaintiff also filed a motion for a default judgment (ECF No. 55) in which he argues that Defendants failed to timely respond to his Motion to Amend his TRO (ECF No. 53). However, the Court notes that Defendants did file a

---

[1] Plaintiff's Motion for Relief (ECF No. 26) is identical to his Motion for an Emergency TRO/Emergency Restraining Order (ECF No. 25).

6

response by November 17, 2023, as required. (*See* ECF No. 54.) Thus, the Court will deny Plaintiff's Motion for a Default Judgment.

### e. Motion to Dismiss

In their Motion to Dismiss (ECF No. 32), Defendants argue that 1) 42 USC § 1997e(e) requires that claims two and three in Downing's FAC be dismissed because they do not have compensable damages; 2) Dr. Khan should be dismissed from the instant suit (claim two), because he had no personal participation in the alleged violation(s) and § 1983 actions do not permit vicarious/supervisory liability or respondeat superior; and 3) Vincent Varias should be dismissed from the action because Downing failed to allege a cognizable Fourteenth Amendment violation. The Court will deny the motion as to the claims.

#### i. Compensable Damages

The Court is unpersuaded by Defendants' argument that Downing's second and third claims lack compensable damages. Defendants claim that Downing's claims for inadequate mental health care treatment lack compensable damages because the Prison Litigation Reform Act (PLRA) requires more than allegations of emotional and mental injury but also physical injury that is not merely de minimis. (ECF No. 32 at 7-10.)

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 USC § 1997e(e). However, while the PLRA requires more than de minimis physical injury for many constitutional claims, *see Oliver v. Keller,* 289 F.3d 623, 627 (9th Cir. 2002)*,* it does not apply to all constitutional claims, such as Fourteenth Amendment claims regarding inadequate mental health care. *See id.* at 630 ("To the extent that appellant has actionable claims for compensatory, nominal or

7

1  punitive damages—premised on violations of his Fourteenth Amendment rights, and not on any alleged mental or emotional injuries—we conclude the claims are not barred by § 1997e(e)."); *see also Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought.").

Here, Plaintiff's claims are not premised on violations of any alleged mental or emotional injuries, but the violation of his Fourteenth Amendment right to adequate mental health care. Plaintiff alleges in claim two that Dr. Khan and Sandquist played a game of moving him in and out of the psych unit and "denied [him] help from psych services." (ECF No. 6 at 4, 9-10.) Plaintiff alleges in claim three that Varias moved him from psych services and denied that Plaintiff was suicidal without checking his file when Plaintiff expressed concerns about the move. Plaintiff also alleges that both Varias and Sgt. Floyd joked about tasing Plaintiff and expressed that Plaintiff, who had told them he was suicidal, should just kill himself so that they would have less work. (*Id.* at 5, 11-12.) Plaintiff requested punitive and compensatory damages because he was "medically neglected" and his "medical & mental health went untreated by Clark County Detention Center employees." (*Id.* at 6.) Clearly, Plaintiff brings claims for allegedly not receiving medical treatment as required by the Fourteenth Amendment, which is not subject to § 1997e(e)'s de minimis physical harm requirement. *Oliver*, 289 F.3d at 630. If this were not the case, then prisoners would be impeded from bringing many denial of mental health care claims, which would often impact plaintiffs mentally and emotionally, not physically. The Court denies Defendants' motion to dismiss based on the argument that Plaintiff failed to allege compensable damages.

///

ii. Dismissal of Dr. Khan

The Court finds Defendants' argument that Dr. Khan cannot be held liable because he never personally participated in any alleged violation similarly unpersuasive. "Liability under § 1983 arises only upon personal participation by the defendant." *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). "A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Defendants argue that Dr. Khan should be dismissed from this case because Plaintiff never argues in claim two that Dr. Khan personally participated in the alleged violations. (ECF No. 32 at 10-13.) In his amended complaint, Plaintiff alleges that Sandquist repeatedly removed him from the psych services unit, and Dr. Khan or another psych services employee would eventually move him back. He states that Dr. Khan and Sandquist were playing a game by moving him around and knew that this would make him suicidal. (ECF No. 6 at 10.) Plaintiff goes beyond merely alleging that Dr. Khan should be held liable as Sandquist's supervisor; he claims that Sandquist and Dr. Khan both participated in this scheme of moving him back and forth. At the motion to dismiss stage, the Court must take Plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *Lee*, 250 F.3d at 679. Despite Defendants' arguments to the contrary, Plaintiff is not required at this stage to prove that Dr. Khan was aware of the transfers prior to Plaintiff telling him. Plaintiff has sufficiently alleged that Dr. Khan personally played a role in the alleged events, so the Court will deny the motion as to this claim.

iii. Dismissal of Vincent Varias

Defendants lastly argue that Varias should be dismissed from this case because Plaintiff failed to allege a cognizable Fourteenth Amendment violation.

1    Defendants first argue that any derogatory statements Varias made at most
2    caused emotional or mental injury which is not cognizable under the PLRA. (ECF
3    No. 32 at 14.) The Court has already addressed this argument earlier in the
4    order, so the Court will simply note that it rejects the same argument here.

5    Defendants then argue that Varias's alleged statements are not the basis for
6    a cognizable Fourteenth Amendment inadequate mental health care claim
7    because Varias transferred Plaintiff back to the psych unit immediately after
8    Plaintiff met with Varias for the second time. (*Id.*) Whether or not Varias
9    immediately returned Plaintiff to the psych unit does not excuse his alleged
10   derogatory statements against Plaintiff. Plaintiff adequately stated a claim that
11   Varias's statements constituted a denial of mental health care treatment because
12   they increased his suicidal ideation. No reasonable concept of mental health care
13   treatment would include telling a person who had just expressed suicidal
14   ideations that he should just kill himself. Thus, Varias moving Plaintiff back to
15   the psych ward in no way shields his decision to make those statements from a
16   claim for inadequate mental health care treatment.

17   The Court is also unpersuaded by Defendants' argument that Plaintiff failed
18   to state a cognizable claim with regards to Varias's decisions concerning
19   Plaintiff's placement. Defendants assert that Plaintiff faced no substantial risk
20   of harm because Downing was already suicidal and when Plaintiff informed
21   Varias of his suicidal ideation, Varias returned him to the psych unit. (ECF No.
22   32 at 14.)

23   Even though Plaintiff states that he was already suicidal before the transfer,
24   Defendant's argument ignores that Plaintiff alleges the transfer decision
25   increased his suicidal ideation (ECF No. 6 at 5, 12.), so Plaintiff faced harm as a
26   result of Varias's actions. Also, even if Plaintiff had not actually suffered any
27   injury, there was still a substantial risk of harm in moving him or anyone else
28   similarly situated from the psych ward without double checking their file or

1 taking any other preventative steps when the individual raises concerns about
2 feeling suicidal.

3 Furthermore, Defendant's argument that Varias returned Plaintiff to the psych ward immediately after learning of Plaintiff's suicidal ideations contradicts Plaintiff's factual pleadings, which the Court must take as true and consider in the most favorable light to Plaintiff at this stage. In his complaint, Plaintiff stated that in response to his request that Varias check his file, Varias simply denied that Plaintiff was suicidal. (*Id.* at 5.) Thus, despite Defendants' claim that Varias was unaware of Plaintiff's suicidal ideations until he met with Plaintiff a second time, Plaintiff alleges he brought up his suicidal feelings immediately after being informed of the transfer. Instead of acknowledging these concerns, Varias attempted to punish Plaintiff for "refusing housing" by sending him to the disciplinary unit. As a result, the Court will deny not dismiss Varias from the case.

**IV.    CONCLUSION**

It is therefore ordered that the following motions are denied: 1) Plaintiff's Emergency Motion for a Temporary Restraining Order (TRO) (ECF No. 25), Plaintiff's Motion for Relief and Affidavit (ECF No. 26), Defendants' Motion to Dismiss (ECF No. 32), Plaintiff's Motion for the Court to Reconsider its Order Granting a Stay of Discovery (ECF No. 42), and Plaintiff's Motion for Default Judgment (ECF No. 55).

It is further ordered that Plaintiff's Motions to Amend his Motion for a TRO (ECF Nos. 34, 36, 53) are granted.

///
///
///
///
///

It is further ordered Plaintiff's Motion to Extend Time to Respond to Defendants' Motion to Dismiss (ECF No. 37) is granted nunc pro tunc.

DATED THIS 7th day of June 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE